UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONI FOX LEMMONS,

Plaintiff,

v.

GONZALES CONSULTING SERVICES,

Defendant.

_____________________________________/

Case No. 1:14-cv-252

HON. JANET T. NEFF

**OPINION AND ORDER**

Plaintiff filed this action against her former employer, Gonzales Consulting Services, alleging claims of sex discrimination/hostile work environment and retaliation. Defendant has filed a motion for summary judgment (Dkt 41); Plaintiff has filed a Response (Dkt 42); and Defendant has filed a Reply (Dkt 43). Having fully considered the parties' briefs and accompanying exhibits, the Court grants Defendant's motion.[1]

## I. Facts

The parties have filed a Joint Statement of Uncontested Material Facts (SMF) (Dkts 41-3, 42-1) agreeing to numerous underlying facts, which provides the factual context for the instant motion, as follows.

Gonzales Consulting Services, Inc. (GCS) is a private company and federal contractor that provides technical, management, and administrative support services to federal clients, such as the

---

[1]Because the facts and the parties' legal positions are fully presented in the materials submitted, the Court finds oral argument unnecessary to decide the motion. *See* W.D. Mich. LCivR 7.2(d).

Department of Homeland Security, Department of Commerce, Department of Interior, Department of Treasury, and Department of Defense in various locations throughout the nation. Albert Gonzales is the President of GCS. GCS is headquartered in Greenwood Village, Colorado, and operates a dispatching center (the "MegaCenter") in Battle Creek, Michigan, that provides dispatching services to the federal buildings owned and operated by its federal clients, including the Department of Homeland Security ("DHS") and the Federal Protective Service ("FPS").

Plaintiff Toni Fox Lemmons, a female, was employed by GCS from July 14, 2008 until May 24, 2013. During this entire period, Plaintiff was an employee of GCS, not the United States Government. Plaintiff was initially hired by GCS to the position of Data Entry at the MegaCenter, earning $13.57 per hour. During her employment with GCS, she held various positions. On April 28, 2013, Plaintiff's title changed from Operator/Telecommunicator 2 (OTC 2) to Secretary I; however, Plaintiff's hourly rate of $21.21 remained the same. At the time of her termination, Plaintiff was employed as a Secretary I, and was assigned as the contract administrative assistant to Douglas Lebert, the FPS Law Enforcement Program Manager at the Battle Creek MegaCenter. Although she held different job titles, Plaintiff worked with Mr. Lebelt from 2009 through her termination. Mr. Lebert is an employee of the U.S. Government, not GCS. Plaintiff reported to and was supervised by GCS Contract Project Manager, Crystal Fitzgerald, a female, who is a GCS employee.

As an hourly employee, Plaintiff was expected to punch in and out on a daily basis in order to track her hours worked. If she missed a punch, she was expected to handwrite in her time and have it approved by her supervisor. Plaintiff was also responsible for recording her time on GCS' computer timekeeping program, Deltek Time Collection ("Deltek"). The U.S. Government would

then audit the timekeeping records by comparing the "punch" times against the times recorded by employees in Deltek.

On October 31, 2012, Plaintiff attended a Halloween celebration at the MegaCenter, voluntarily wearing a cat costume to work, which consisted of a black shirt, black pants, and ears. Plaintiff also voluntarily posed for photographs in her work area, wearing her costume. The photos were taken by GCS employee Debra Sebastian. One photo showed Plaintiff standing in front of her desk, and the other photo showed Plaintiff standing, leaning on a desk, next to a pretend "litter box." When Plaintiff saw the photos prior to their posting to the intranet, she asked Deb Sebastian to not post one of the photographs because as a result of the camera's flash, Plaintiff believed that her bra was visible through her shirt in the photograph.

On April 29, 2013, Deb Sebastian posted photographs from a number of workplace events that had taken place over the prior few months, including the Halloween party from October 2012, to an intranet site that is accessible only by GCS and U.S. Government employees at the MegaGenter. The photographs Ms. Sebastian posted included a photograph she had taken of Plaintiff during the MegaCenter's Halloween party. Plaintiff objected to the photograph of her that was posted to the intranet, and expressed her desire that the photograph be taken down to Crystal Fitzgerald, Deb Sebastian, and FPS employees Doug Lebert and Jeff Edinger. Later that same day, Ms. Sebastian removed the picture in question from the intranet.

A few days later, on May 1, 2013, Plaintiff turned 40 years old. When Plaintiff came into work that day, Plaintiff's office space was decorated for her birthday. These decorations included copies of the Halloween picture to which she had previously objected, stamped with the language, "Happy Birthday Toni! Look who is 40!!!!!!" That morning Plaintiff confronted Deb Sebastian,

Doug Lebert and Crystal Fitzgerald about the decorations. She created audio recordings of these interactions.

On May 1, 2013, Mr. Lebert instructed Plaintiff that prior to leaving on vacation she needed to: return her company-issued Blackberry, give him the keys to his office, provide him with all of his logins and passwords and provide him with a schedule of any items that may need attention during Plaintiff's absence. On May 3, 2013, Plaintiff commenced her vacation.

Subsequent to these events, GCS conducted an investigation into claims and complaints made by Plaintiff. On May 9, 2013, via text message, Sheila McCombs, Director of Contract Administration and Human Resources, asked Plaintiff to provide written statements. During meetings with Plaintiff, Ms. McCombs asked Plaintiff about her claims and complaints. Plaintiff provided Ms. McCombs with three written statements. Ms. McCombs also obtained written statements from a number of other individuals who worked at the MegaCenter regarding the issues Plaintiff had raised about the posting of the Halloween picture and the decorations for Plaintiff's 40th birthday. At the conclusion of her investigation, Ms. McCombs prepared an investigation report detailing her findings.

On May 17, 2013, Plaintiff was placed on administrative leave, without pay, pending completion of the investigation. Plaintiff's employment with GCS was terminated, effective May 24, 2013. The reasons GCS provided to Plaintiff for her termination were time theft and insubordination.

On March 13, 2014, Plaintiff filed the present cause of action against GCS. Plaintiff's Complaint asserts four causes of action: Count I–Violations of Title VII of the Civil Rights Act of 1964 (Title VII), Sexual Discrimination; Count II–Title VII Retaliation; Count III–Violations of the

Elliot-Larsen Civil Rights Act (ELCRA), Sexual Discrimination; and Count IV–Violation of the ELCRA, Retaliation.

## II. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citation omitted).

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess*, 735 F.3d at 471 (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The ultimate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sierra Brokerage Servs.*, 712 F.3d at 327 (quoting *Anderson,* 477 U.S. at 251-52).

## III. Discussion

Defendant argues that Plaintiff cannot establish the requisite elements of her sexual harassment/hostile work environment claim or a retaliation claim. Have carefully considered the record and the governing legal standards, the Court agrees.

A. Hostile Work Environment Claim

Defendant argues that Plaintiff cannot establish a hostile work environment claim because she was not subjected to actionable sexual harassment.

Title VII prohibits an employer from maintaining a hostile or abusive work environment as a result of sex discrimination. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999). As Defendant sets forth, and Plaintiff does not dispute, to establish a prima facie case of hostile work environment based on sex/gender, Plaintiff, a member of a protected class, must show (1) she was subjected to harassment that was (1) unwelcome; (2) based on her gender; and (3) sufficiently severe or pervasive to affect a term, condition, or privilege of her employment. *Arnold v. City of Columbus*, 515 F. App'x 524, 535 (6th Cir. 2013); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) and *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005).[2]

A victim of harassment must "'show … that the alleged conduct constituted an unreasonably abusive or offensive work related environment or adversely affected the reasonable employee's ability to do his or her job.'" *Allen v. Michigan Dep't of Corrs.,* 165 F.3d 405, 410 (6th Cir. 1999) (quoting *Davis v. Monsanto Chem. Co.,* 858 F.2d 345, 349 (6th Cir. 1988)); *see also Valentine-Johnson v. Roche,* 386 F.3d 800, 814 (6th Cir. 2004) ("'[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment'" (citation omitted)). The Supreme Court has held that, in order to constitute actionable harassment, the conduct complained of must be judged

[2]"[Discrimination [c]ases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases." *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004). To the extent there are any distinctions in the required proofs for the specific claims presented here, they are not material for purposes of this motion.

by both an objective and a subjective standard, i.e., it must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive. *Williams*, 187 F.3d at 566. The court considers the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Clark,* 400 F.3d at 351.

A company is automatically liable for a hostile work environment created by a superior.[3] *Id.* at 348. However, the standard differs in the case of a harassing co-worker:

> Depending upon whether the alleged harasser is a co-worker or a supervisor of the victim, there are slightly different standards for evaluating whether the employer as a whole is vicariously liable for the hostile work environment. In the case of a harassing co-worker, "an employer is liable if it knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." By contrast, "an employer is vicariously liable for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee."

*Id.* (citations omitted).

Here, Defendant argues that Plaintiff's allegations of sexual harassment are insufficient as a matter of law to establish a hostile work environment claim because the alleged incidents or comments were not severe or pervasive enough to create an objectively hostile work environment. The record as a whole fully supports this contention. The primary triggering incident for Plaintiff's allegation of a hostile work environment was the intranet posting and 40th birthday office

---

[3]There is an exception to this rule where the employer exercises reasonable care to prevent and promptly remedy any sexually harassing behavior, and the plaintiff unreasonably failed to take advantage of preventive or corrective opportunities or otherwise avoid harm. *Clark,* 400 F.3d at 348. However, the exception applies only if the harassment did not result in a negative tangible employment action for the victim. *Id.*

decorations that included photos of Plaintiff in her office Halloween party cat costume, at least one photo of which Plaintiff complained showed her bra through her black costume. The photos, for which Plaintiff voluntarily posed, were taken by coworker Deb Sebastian, and posted on the intranet along with numerous other photos from the office celebration. The intranet posting was removed within a few hours. The posting of the photos and office decorations can hardly be considered to be harassment directed at Plaintiff's gender, since they were not gender-specific and, in fact, Plaintiff engaged in the same general activities by similarly decorating Doug Lebert's office on his 30th birthday. The same is true of the generally inappropriate emails—Plaintiff engaged in similar activities, and to the extent some of the emails were sexual in nature, they, for the most part, were not directed at Plaintiff because of her gender, but instead were circulated by and amongst both male and female workers. The alleged conduct was in many instances directed at employees of both genders.

Even if the conduct and activities cited by Plaintiff could be considered to be based on her gender, they were not sufficiently severe or pervasive to be actionable in the context of Plaintiff's overall complaints about the workplace. As demonstrated by Plaintiff's written complaints to McCombs in the course of Defendant's investigation, the cited "sexual harassment" was only one focus of Plaintiff's complaints about her work environment. For example, in Plaintiff's written May 20, 2013 statement, she stated that she had issues with the following actions, which "create a hostile work environment which makes me not want to work here": the photos posted, which took about four hours to be taken down, and the offices decorated with the photos; "People acting inappropriately in the workplace"; People not having correct job titles/duties/workload/pay"; "People getting more training but others don't and get walked out" (Dkt 41-5 at Page ID# 445). The

Court concludes based on the totality of the circumstances, including the frequency of the discriminatory conduct and its severity, *see Clark,* 400 F.3d at 351, that no genuine issue of material fact exists regarding an objectively hostile environment. Plaintiff has failed to establish a prima facie case of hostile-work-environment sexual harassment.

Even assuming that Plaintiff could establish a sufficiently severe or pervasive environment, the Court finds no basis for imputing liability to GCS. As Defendant contends, it is undisputed that GCS had an established complaint procedure for discrimination and, more specifically, sexual harassment (Dkt 41-3 at Page ID# 268-69). Plaintiff failed to avail herself of this procedure with respect to the overall alleged sexual harassment prior to April 29, 2013, after which Defendant took prompt corrective action. *Clark,* 400 F.3d at 348. Even when Plaintiff finally did make an indirect "report" of the now-complained of incidents, relating primarily to the Halloween photos, to Lebert's supervisor at the FPS, Gregory Beahm, who relayed the complaint to Defendant, Defendant, specifically its director of human resources, Sheila McCombs, conducted a full investigation, interviewing and taking statements from Plaintiff as well as eleven other witnesses. McCombs' investigation concluded there was a lack of evidence to support Plaintiff's complaint that she was harassed by any GCS or government employee which created a hostile working environment (Investigation Report, Dkt 41-4 at Page ID# 367-79). This conclusion is supported by the record. Defendant is entitled to summary judgment of Plaintiff's hostile work environment claims.

B. Retaliation

Defendant likewise argues that Plaintiff cannot establish her retaliation claims. Defendant argues that Plaintiff's employment was terminated for legitimate, non-retaliatory reasons wholly unrelated to any alleged protected activity: namely two instances of timecard fraud and three

instances of insubordination. The Court finds no triable issue of fact with respect to Plaintiff's retaliation claim, and Defendant is entitled to summary judgment.

To establish a *prima facie* case of retaliation, Plaintiff must show: (1) she engaged in a protected activity, (2) Defendant knew of her protected activity, (3) Defendant took an employment action adverse to her, and (4) there was a causal connection between the protected activity and the adverse employment action. *McClain v. NW Cmty. Corrs. Ctr. Judicial Corrs. Bd.*, 440 F.3d 320, 335 (6th Cir. 2006); *see also Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363 (6th Cir. 2001). "To establish a causal connection, a plaintiff must proffer evidence sufficient to raise the inference that her protected activity was likely the reason for the adverse action." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (citations and quotations omitted).

The well-established *McDonnell Douglas/Burdine*[4] burden-shifting framework applies to claims of discrimination brought under Title VII. *McClain*, 440 F.3d at 332. Once a plaintiff sustains the burden of establishing a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the termination. *Id.* If the defendant successfully carries its burden, the burden returns to the plaintiff to produce evidence from which a jury could find that the stated reason is merely pretextual. *Id.* The plaintiff may demonstrate pretext by showing that the defendant's "articulated reasons '(1) had no basis in fact, (2) ... did not actually motivate [the adverse action taken against her], or (3) ... were insufficient to motivate [the adverse action taken against her].'" *Id.* (citation and italics omitted).

---

[4]*See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Tex. Dept of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

On the record presented, it is highly doubtful that Plaintiff can establish the requisite causal connection between her purported "protected activity" and the termination of her employment. Defendant's investigation of Plaintiff's time card fraud was initiated several months prior to Plaintiff's complaints about the photos, and her insubordination had already occurred. But even assuming that Plaintiff has established a prima facie case, the Court concludes that she cannot establish that Defendant's non-retaliatory reasons for terminating her employment, timecard fraud and insubordination, were pretext. Plaintiff cannot show that Defendant's articulated reasons had no basis in fact, did not actually motivate the adverse action taken against her, or were insufficient to motivate the adverse action taken against her. *See McClain*, 440 F.3d at 332.

Plaintiff argues that she has shown that Defendant's reasons for her termination were pretext because they were not true; for instance, she never falsified her timecard. However, this assertion appears to be based merely on Plaintiff's limited, brief comment in her deposition that, as far as she was aware, her time card punches "never" did not match her Deltek Time entries as required (Pl's. Resp. at Page ID# 635, citing Ex. 2, Fox Tr. 54:25-55:2). Given the limited record support, this pretext argument is unpersuasive.

In any event, as Defendant further points out, "[a]n employee cannot avoid summary judgment by challenging an employer's honest belief that he deserved discipline with hypothetical theories, conjecture, or an unsupported denial of wrongdoing." *Parks v. UPS Supply Chain Solutions, Inc.,* 607 F. App'x 508, 515 (6th Cir. 2015); *see also Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001). In order to show that an employer's reasons for an adverse employment action were pretext, a plaintiff must produce sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated

against the plaintiff. *Braithwaite*, 258 F.3d at 493. Thus, Plaintiff must "put forth evidence which demonstrates that [GCS] did not 'honestly believe' in the proffered [non-retaliatory] reason for its adverse employment action." *Id.* at 493-94. Plaintiff has failed to meet this standard.

A defendant may "'avoid a finding that its claimed nondiscriminatory reason was pretextual' if it establishes that it 'reasonabl[y] reli[ed] on the particularized facts that were before it at the time the decision was made,' even if evidence later shows that the reason was baseless." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 653 (6th Cir. 2015) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006) (citation and internal quotation marks omitted)). A defendant "must show that it 'made a reasonably informed and considered decision before taking an adverse employment action.'" *Id.* (citation and internal quotation marks omitted).

Ample evidence establishes that Defendant conducted separate, specific investigations into both Plaintiff's timecard fraud and her insubordination, which included video documentation[5] and witness interviews, as well as other supporting data and evidence (*see, e.g.*, JSMF, Ex. 24, 5/23/2013 Investigation Report, and Ex. 25, Recommendation for Termination; Def's. Ex. B, Sheila McCombs Declaration; Ex. C., Ervin R. Piotrowski Declaration; Ex. D., Crystal Fitzgerald Declaration). Contrary to Plaintiff's contention, Defendant's decision to terminate her employment for the articulated reasons of timecard fraud and insubordination was a reasonably informed and considered decision. Defendant is entitled to summary judgment of Plaintiff's retaliation claims.

---

[5]With regard to the timecard fraud, in February 2013, FPS employee Ervin Piotrowski, initiated and conducted an independent audit of Plaintiff's time records, which revealed that on two occasions Plaintiff's Deltek time (the GCS online time recording system) did not match her time card (FPS time recording system) or the video evidence; and there was no legitimate reason for Plaintiff to have recorded time when she was not at the MegaCenter.

## IV. Conclusion

The Court finds no genuine issues of material fact concerning Plaintiff's claims of hostile work environment or retaliation. Defendant is entitled to summary judgment on all claims.

A Judgment will be entered consistent with this Opinion and Order.

Accordingly:

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (Dkt 41) is GRANTED.

Dated: December 7, 2015

/s/ Janet T. Neff
JANET T. NEFF
United States District Judge